**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

LIFE CHANGING MINISTRIES, INC.,

    Plaintiff,

v.                                                Case No: 5:15-cv-59-Oc-30PRL

CANOPIUS US INSURANCE, INC.,

    Defendant.

## ORDER

Defendant, Canopius US Insurance, Inc., relying on an engineering report, denied Plaintiff Life Changing Ministries, Inc.'s ("LCM") sinkhole claim. LCM sued and invoked neutral evaluation. After the neutral evaluator found sinkhole damage, Canopius paid the claim. Now both parties seek summary judgment. Because Florida law holds an insurer confesses judgment when it pays a claim after suit is filed, LCM's motion (Doc. 14) must be granted. And because an insurer who makes an incorrect claim determination is liable for a well-pleaded claim for attorney's fees, Canopius's motion (Doc. 18) must be denied.

## FACTUAL & PROCEDURAL BACKGROUND

On July 2, 2013, LCM reported a sinkhole to Canopius, its surplus lines insurance carrier. Canopius hired SDII Global to conduct a subsidence investigation. SDII Global provided a 69-page report, outlining its thorough investigation and concluding there was no sinkhole damage. On October 29, 2013, Canopius sent a letter to LCM denying the sinkhole claim based on SDII's report.

Then nothing happened for more than a year. On October 31, 2014, LCM's counsel filed a Civil Remedy Notice of Insurer Violation (the "CRN") with the Florida Department of Financial Services. A CRN is a condition precedent to a bad faith action brought pursuant to section 624.155, Florida Statutes, and an insurer is provided a 60-day safe harbor period in which to cure the allegations in a CRN. LCM's CRN, without specifying how, alleges Canopius failed to conduct an adequate investigation.

On December 9, 2014—39 days after filing the CRN—LCM's counsel provided a competing engineering report to Canopius.[1] The 7-page report from Applied Engineering & Geosciences ("Applied") was dated August 20, 2014, or more than two months before LCM's counsel filed a CRN. Although Applied conducted additional testing in June 2014, its report noted that the SDII investigation "appeared to be within the standard of care exercised by most investigators." Ultimately, Applied concluded that there was sinkhole activity at LCM's property.

On December 30, 2014, Canopius responded to the CRN and denied acting in bad faith. The following day, LCM sued for breach of contract in state court and invoked neutral evaluation. LCM demanded Canopius pay attorney's fees pursuant to section 627.428, Florida Statutes. Canopius timely removed this action to federal court, and moved for a stay pending the results of the neutral evaluation. This Court granted the stay.

---

[1] There is a non-material discrepancy between the date the Applied report was provided to Canopius. The cover letter in both LCM and Canopius's materials are dated December 2, 2014 (Docs. 14-2 and 18-8), but a fax time stamp on the cover letter Canopius provided shows a receipt date of December 9, 2014. (Doc. 18-8).

Florida's Department of Financial Services appointed Deborah Veasey, P.G., as neutral evaluator. On September 23, 2015, Ms. Veasey issued her neutral evaluation report, concluding that sinkhole activity was a contributing factor to the damage at LCM's property. Significantly, her reported noted the following:

- Ms. Veasey observed similar damage to the damage SDII reported in September 2013, and noted that "the structure has remained relatively stable since that time."

- The SDII report "included a typical scope of work meeting the general requirements of a full sinkhole study," and Ms. Veasey relied SDII's data.

- Relying on SDII and Applied's boring profiles, Ms. Veasey determined there was sinkhole activity.

- Ms. Veasey's report included a $30,144.09 replacement cost estimate for above-surface repairs to Plaintiff's property, prepared by Paul Davis Restoration.

Canopius, relying on Ms. Veasey's report, decided to admit coverage and pay LCM's claim. On December 29, 2015, Canopius admitted coverage in a letter sent to LCM's counsel and counsel for Centerstate Bank of Florida ("Centerstate"), which acquired LCM's property in a foreclosure sale. The letter also explained that Canopius was not subject to Chapter 627 of the Florida Statutes because it is a surplus lines carrier.

On April 15, 2016, Canopius issued a $25,528.91 payment to LCM for the above-surface damage to the property. Canopius then sent payments totaling $158,458.59 to Centerstate for sub-surface remediation. After receiving the payment, LCM filed a case management report on June 6, 2016, re-opening this case. The parties then filed the instant motions regarding Canopius's liability and LCM's entitlement to attorneys' fees.

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute

about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

There are two issues before the Court: (1) whether Canopius legally admitted liability when it paid LCM's claim following receipt of the neutral evaluator's report during litigation, and (2) whether LCM is entitled to collect attorneys' fees as part of the claim payment. The answer to both questions is yes, despite this Court's belief that Canopius did nothing wrong while handling LCM's claim.

### A. Canopius confessed judgment when it paid LCM's claim

LCM argues Canopius confessed judgment when it changed course and paid the sinkhole claim after LCM sued. Canopius, relying on *State Farm Florida Ins. Co. v. Colella*, 95 So. 3d 891 (Fla. Dist. Ct. App. 2012), denies it confessed judgment because LCM was not forced to file suit and failed to establish that Canopius's engineer was incorrect. LCM has the better of this argument.

Three days after LCM moved for summary judgment, the Florida Supreme Court in *Johnson v. Omega Ins. Co.*, 200 So.3d 1207 (Fla. 2016), clarified what constitutes a confession of judgment. Its clear and unequivocal explanation follows:

> Furthermore, it is well settled that the payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment, constitutes the functional equivalent of a confession of

5

judgment. *See, e.g., Pepper's Steel & Alloys, Inc. v. U.S.*, 850 So.2d 462, 465 (Fla. 2003) ("[Section 627.428] clearly provides that attorneys' fees shall be awarded against the insurer when judgment is rendered in favor of an insured. In Florida, the payment of a settlement claim is the functional equivalent of a confession of judgment or a verdict in favor of the insured.") (citation omitted); *Ivey*, 774 So.2d at 684–85 ("[W]here an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes the functional equivalent of a confession of judgment or verdict in favor of the insured, thereby entitling the insured to attorney's fees."); *Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So.2d 217, 218 (Fla.1983) ("When the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is, indeed, the functional equivalent of a confession of judgment or a verdict in favor of the insured."); *Barreto v. United Servs. Auto. Ass'n*, 82 So.3d 159, 162 (Fla. 4th DCA 2012) ("Here, because the insurer paid the full amounts claimed only after suit was filed, it essentially confessed judgment.") (emphasis supplied); *De Leon v. Great Am. Assur. Co.*, 78 So.3d 585, 591–92 (Fla. 3d DCA 2011) ("[A]ny success in an action on an insurance policy, let alone the full payment of the asserted claim, requires an award of fees."); *Goff v. State Farm Fla. Ins. Co.*, 999 So.2d 684, 688 (Fla. 2d DCA 2008) (policyholder was entitled to attorney's fees because the insurer only agreed to grant benefits after the action was filed).

*Id.* at 1215.

Applying *Johnson*, the Court has no choice but to conclude Canopius confessed judgment: (1) Canopius denied LCM's claim; (2) LCM sued; and (3) Canopius paid LCM's claim. Nothing more is required. Canopius's arguments that LCM was not required to file suit and that LCM did not prove Canopius's engineer was incorrect are of no consequence. LCM's motion, therefore, must be granted since Canopius confessed judgment.

**B. LCM is not barred from collecting attorneys' fees**

Canopius argues LCM is not entitled to attorneys' fees for two reasons: (1) LCM pled entitlement to attorneys' fees under the wrong statute (section 627.428, Florida Statutes, instead of section 626.9373, Florida Statutes); and (2) Canopius's claim

determination was not incorrect. LCM's response fails to address either issue directly, and, instead, unhelpfully argues Canopius is estopped from denying (or perhaps waived the ability to deny that) Chapter 627 applies to it. Neither of Canopius's arguments are meritorious, and its motion must be denied.

### 1. LCM's pleading the wrong statute does not bar its recovery of fees

The gist of Canopius's first argument is that LCM did not plead entitlement to fees under the correct statute and, therefore, is not entitled to fees. Implied in this argument is the premise that LCM had to plead its entitlement to fees. Canopius's argument fails because it rests on this false premise.

Federal procedural law—not Florida substantive law—governs the pleading requirements of claims for attorneys' fees. *Hilson v. GEICO Gen. Ins. Co.*, No. 8:11-CV-13-MSS-MAP, 2016 WL 3211474, at *2 (M.D. Fla. Mar. 31, 2016). Under the procedural law of the Eleventh Circuit, a party—even one in a diversity case such as this—need not plead an entitlement to attorneys' fees in order to recover them. *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000); *see also Inland Dredging Co. v. Panama City Port Auth.*, 406 F. Supp. 2d 1277, 1280 (N.D. Fla. 2005) (explaining, "The controlling law in this circuit is that, under Rule 54(c), a party may recover attorney's fees without including in its pleadings a specific demand therefor."). LCM, therefore, would have been entitled to recover attorneys' fees under section 626.9373 regardless of whether

the statute was referenced in the pleadings.[2] Thus, the Court concludes LCM's failure to plead the correct statutory basis of attorneys' fees is not a bar to its ability to recover fees.

### 2. Canopius's claim determination was *incorrect* under *Johnson*

Despite having paid the claim, Canopius argues LCM has not shown that SDII's conclusions that there was no sinkhole damage was incorrect. Essentially, Canopius argues there is an unresolved issue of fact as to whether sinkhole damage exists, which means its claim determination was not proven incorrect as required by *Johnson*.[3]

Canopius, though, misunderstands the effect of its payment—which was a confession of judgment. An insurer that confesses judgment, the Florida Supreme Court explained, is required to pay attorney's fees. *Johnson*, 200 So.3d at 1215 (quoting *Pepper's Steel & Alloys, Inc.*, 850 So.2d at 465; *Ivey*, 774 So.2d at 684–85; *De Leon*, 78 So.3d at 591–92; and *Goff*, 999 So.2d at 688). In this sense, a confession of judgment amounts to an admission that the insurer's claim determination was incorrect, triggering an insured's entitlement to attorneys' fees.

The Florida Supreme Court did recognize a narrow exception to this rule based on *Colella*, 95 So. 3d 891: attorneys' fees are not to be awarded to an insured who litigates in

---

[2] Even under Florida procedural law, the Court believes LCM's failure to plead the correct statute would not have been a bar since "the specific statutory or contractual basis for a claim for attorney's fees need not be specifically pled, and ... failure to plead the basis of such a claim will not result in waiver of the claim." *Caufield v. Cantele*, 837 So. 2d 371, 378 (Fla. 2002).

[3] Canopius raised this argument in response to LCM's motion for confession of judgment. But Canopius misunderstands *Johnson*, in which the Florida Supreme Court only considered whether a claim was *incorrectly* denied in connection to entitlement of attorneys' fees—not the confession of judgment doctrine. The Court considers this argument as having been raised in Canopius's summary judgment motion.

bad faith. *Johnson*, 200 So.3d at 1217–18. This exception, though, was specifically limited to the facts in *Colella*. *Id.* ("[T]here is nothing in *Colella* to imply that an outcome in favor of the insurance company should apply beyond those facts.").

The Court is not persuaded the same exception should be applied here because this case falls somewhere between the facts in *Johnson* and *Colella*. Canopius, by all accounts, hired an engineer that undertook a rigorous and extensive examination to determine if sinkhole activity existed. In fact, SDII's testing was more extensive than either Applied's testing or that of the neutral evaluator. Canopius rightfully relied on that report before LCM sued. As such, Canopius cannot be said to have done an inadequate claim investigation, as in *Johnson*, or wrongfully denied LCM's claim.

On the other hand, LCM has more in common with the plaintiff in *Colella* than in *Johnson*. LCM waited nearly a year after Canopius denied the sinkhole claim to hire its own engineer. After receiving Applied's report, LCM filed a CRN against Canopius without disputing the claim determination or providing Canopius Applied's report. LCM accused Canopius of conducting an inadequate claim investigation despite its own engineer finding SDII's investigation "to be within the standard of care exercised by most investigators." LCM waited until two-third of the CRN's safe harbor period passed before providing the Applied report, ensuring Canopius would not have time to reinvestigate during the safe harbor period. LCM then sued before invoking neutral evaluation—the purpose of which is to avoid unnecessary litigation, *State Farm Florida Ins. Co. v. Buitrago*, 100 So.3d 85, 88 (Fla. Dist. Ct. App. 2012). And litigation here would have been unnecessary since Canopius paid the claim after getting the neutral evaluator's report. The

Court, of course, can take this into account when determining the reasonableness of LCM's attorneys' fees.

While LCM's conduct is troubling, the Court is not persuaded the facts are similar enough to *Colella* to warrant a finding that LCM cannot recover fees. First, LCM allowed the neutral evaluation process to take place, unlike the plaintiff in *Colella*. *Johnson*, 200 So.3d at 1217. Most importantly, and also unlike *Colella*, the neutral evaluator here determined there was sinkhole damage, meaning Canopius's engineer apparently reached an incorrect conclusion. So while clear that LCM did not handle this case with the utmost good faith, the Court cannot conclude LCM acted in bad faith like the insured in *Colella*.

## **CONCLUSION**

Canopius's payment of LCM's sinkhole claim after LCM sued was a confession of judgment. The effect of the confession of judgment is that LCM is entitled to an award of attorneys' fees, regardless that LCM pled the wrong statute in its complaint. Thus, despite doing the investigation required by Florida law and rightfully relying on its engineer's report, the Court concludes Canopius confessed judgment and LCM can recover fees.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Plaintiff's motion (Doc. 14) is GRANTED.

2. Plaintiff is entitled to partial summary judgment on the issue of liability.

3.     Defendant's motion (Doc. 18) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of November, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record